Joseph PASTERNAK

v.

UNITED STATES.

No. 25-55.

United States Court of Claims.

March 2, 1960.

Harry L. Brown, Washington, D. C., for plaintiff. Alvord & Alvord, Washington, D. C., were on the briefs.

Benjamin H. Pester, Washington, D. C., with whom was Acting Atty. Gen., Howard A. Heffron, for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

MADDEN, Judge.

The plaintiff sues for a refund of income tax paid by him for the year 1941. He claims that he should have been allowed a war loss deduction for that year, which deduction, if it had been allowed, would have greatly reduced his taxable income, and his tax. He was, in fact, allowed a war loss deduction but it was allocated to the year 1942, and therefore, because of the Current Tax Payment Act of 1943, 57 Stat. 126, 26 U.S.C. § 1621, and also apparently because his income for 1942 was smaller, his tax saving was nowhere near so large as it would have been if the deduction had been allowed for the year 1941.

The plaintiff in December 1941 and for some years prior thereto owned real estate and personal property located in Rumania, and personal property located in Hungary. In December, 1941

684

Rumania and Hungary were under the control of Germany, their governments being puppet governments imposed upon those countries by Germany.

The Internal Revenue Code of 1939 was amended by the Internal Revenue Act of 1942, 56 Stat. 798, by the insertion of section 127 entitled "War Losses." In order to avoid the difficulties which a taxpayer would have in proving the fact and the date of his loss of his property in territory which was in the hands of enemy countries, section 127, 26 U.S.C. (1952 ed.) § 127, laid down certain arbitrary rules as to the tax consequences of certain events. Section 127 (a) (2) provided:

"Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States."

The United States declared war on Germany on December 11, 1941. As we have seen, Rumania and Hungary were then under the control of Germany. It would seem to follow that the plaintiff suffered his war loss in 1941, and is entitled to a judgment. The Government urges several reasons why he should not recover. It says that a taxpayer in order to qualify for a war loss deduction, must prove not only that he owned the property in question, but that he had effective ownership and control of the property on the presumptive date of its loss.

■ The owner of property is presumed to possess the legal attributes of ownership. There is no evidence that the plaintiff did not possess those attributes. The owner of property in any country which is governed by a dictatorship is subject to the whims of the dictator. If the power of the dictator to confiscate property at will prevented the plaintiff from having such ownership as would qualify him for a war loss, it did the same for every owner of property in Germany and in all the countries under

German control. Section 127 could not have been meant to be so interpreted.

The Government suggests that because the plaintiff was a Jew, his property might have been taken from him before December 11, 1941, and, therefore, he may have had nothing to lose. We have held that when the evidence showed that the taxpayer's property had been earlier confiscated by a German decree aimed at the property of Jews, the taxpayer was not the owner when the United States declared war on Germany. Mayer v. United States, 111 F.Supp. 251, 115 F. Supp. 171, 126 Ct.Cl. 1. In the instant case there is no evidence of any such decree applicable to the plaintiff's property.

The Government says that the plaintiff has not proved the value of the property for which he claims a war loss. When the plaintiff filed his claims for refund his situation was studied by an examining officer of the Internal Revenue Service. That officer reported that the plaintiff's property in Rumania had cost the plaintiff $19,100, and the property in Hungary $12,100. The report recommended that losses in the above amounts should be recognized, though the plaintiff had not provided "proof of the cost." We suppose that this statement meant that documentary proof had not been presented. Evidence of some kind, oral or circumstantial, must have been presented or the examining officer would not have recommended the allowance, and his superiors would not have acted, as we shall see that they did act, upon his recommendation. We discuss this point further hereinafter.

The examining officer recommended that the plaintiff's war losses be allocated to the year 1942 because the United States declared war on Hungary and Rumania on June 5, 1942. The Internal Revenue agent in charge wrote the plaintiff that his claim for refund of 1941 tax was rejected, and that his claim for refund of 1943 tax was allowed, in the amount of $3,384.71. The 1942 war loss affected the 1943 tax because of the Current Tax Payment Act of 1943, supra. The letter enclosed a copy of the exam-

ing officer's report, which gave the reasons for the action taken. The amount of the plaintiff's losses, determined by the examining officer, and upon which the proposed refund of 1943 taxes was based, was adopted. The plaintiff was advised that he could either accept the findings or reject them and file a protest.

The plaintiff filed a formal protest and request for reconsideration, claiming that his war losses should have been attributed to 1941. The request was denied, and the Commissioner of Internal Revenue issued a rejection of the plaintiff's claim for refund for 1941. The refund for 1943 in the amount of $3,884.-74 was made to the plaintiff, on the basis of the amounts of losses determined by the examining officer.

The Government says that the plaintiff's war losses were 1942 losses, for income deduction purposes, because section 29.127(a)–3 of Treasury Regulations 111 provides:

> " * * * Areas under the control of the governments of Hungary, Rumania, and Bulgaria will not be considered under enemy control prior to the date the United States declared that a state of war existed with such governments."

As we have seen, the United States declared war on Rumania and Hungary on June 5, 1942.

The Treasury Regulation quoted above is contradictory of section 127(a) (2) of the war loss statute, and the statute, not the regulation, must prevail.

We return to the question whether the plaintiff has proved the amount of his losses. We have shown above that the examining officer studied the plaintiff's situation and determined, upon evidence which must have been satisfactory to him, the amount of the losses. The examining officer's determination was adopted by his superiors, and a refund was made to the plaintiff based upon those amounts. The refund was, as we have seen, computed on the plaintiff's 1943 taxes. In the instant suit the plaintiff adopts the loss figures used by the Government in computing the refund given him.

We think the plaintiff was not required to produce, in the trial of the instant case, other evidence of the amount of his losses. Their amounts had been determined by the Government, which had acted upon that determination to the extent of refunding $3,384.71 to the plaintiff. We think that determination, and the action upon it, is evidence, and we accept it as such since there is nothing in the record which contradicts it.

The plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.

**CHELSEA FACTORS, INC.,**
v.
**UNITED STATES.**
No. 372–55.

United States Court of Claims.
March 2, 1960.

